Todd Krakower, Esq.
Krakower DiChiara LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: 201-746-6333
Fax: 347-765-1600

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
--------------------------------------------------------x

**MEGAN DECKER,**

|  |  |
|---|---|
| **Plaintiff,** | **COMPLAINT** |
| **-against-** | Civil Action No. |
| **SIGNATURE HEALTH & WELLNESS CENTER, ANDY ROY, D.C., INDIVIDUALLY, AND ERIC PANCARO, INDIVIDUALLY,** | **July Trial Demanded** |
| **Defendants.** | |

--------------------------------------------------------x

Plaintiff Megan Decker ("Plaintiff"), by and through her attorneys, Krakower DiChiara LLC, upon personal knowledge as to herself and upon information and belief as to other matters, brings this Complaint against defendants Signature Health & Wellness Center, Andy Roy, D.C., Individually, and Eric Pancaro, D.C., Individually (collectively "Defendants"), and alleges as follows:

**INTRODUCTION**

1.     Plaintiff brings this lawsuit seeking recovery against Defendants for Defendants' violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), violations of the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-4.1 *et seq.*, ("NJWHL"),

1

violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD"), violations of the of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1, *et seq.* ("CEPA"), as well as seeking recovery against Defendants for Intentional Infliction of Emotional Distress.

2.      Plaintiff seeks economic, compensatory, liquidated damages, attorneys' fees, punitive damages, and other appropriate legal and equitable relief pursuant to federal law.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4.      This Court has subject matter jurisdiction over Plaintiff's NJWHL, NJLAD, CEPA, and common law claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

5.      Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

## PARTIES

**Defendants**

**Defendant Signature Health and Wellness Center ("Signature Health")**

7.      Defendant Signature Health is a domestic limited liability company with a main business address at 471 Cortland St, Belleville, New Jersey 07109, in Essex County.

2

8.     At all times relevant to this Complaint, Defendant Signature Health (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

9.     At all times relevant to this Complaint, Defendant Signature Health was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiff.

10.    At all times relevant to this Complaint Defendant Signature Health was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

11.    At all times relevant to this Complaint, Defendant Signature Health was and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

12.    At all times relevant to this Complaint, Defendant Signature Health was and is an "employer" as defined under CEPA, N.J.S.A. 34:19-2(a).

**Defendant Andy Roy, D.C.**

13.    Upon information and belief, Defendant Roy was a principal executive officer and/or owner of Signature Health.

14.    At all times relevant to this Complaint, Defendant Roy was and is a doctor licensed to practice chiropractic medicine and was and is associated professionally with Defendant

3

Signature Health.

15.     At all times relevant to this Complaint, Defendant Roy was Plaintiff's direct supervisor.

16.     At all times relevant to this Complaint, Defendant Roy was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiff.

17.     At all times relevant to this Complaint, Defendant Roy had power over personnel decisions at Signature Health, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

18.     Upon information and belief, at all times relevant to this Complaint, Defendant Roy had the power to determine employee policies at Signature Health, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

19.     Upon information and belief, at all times relevant to this Complaint, Defendant Roy was actively involved in managing the day-to-day operations of Signature Health.

20.     At all times relevant to this Complaint Defendant Roy was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

21.     At all times relevant to this Complaint Defendant Roy was, and continues to be, an employer within the meaning of the NJLAD, N.J.S.A. 10:5-5(e).

4

22.     At all times relevant to this Complaint, Defendant Roy was and is an "employer" as defined under CEPA, N.J.S.A. 34:19-2(a).

**Defendant Eric Pancaro, D.C.**

23.     Upon information and belief, Defendant Pancaro was a principal, manager, member, and/or managing member of Signature Health.

24.     At all times relevant to this Complaint, Defendant Pancaro was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiff.

25.     At all times relevant to this Complaint, Defendant Pancaro had power over personnel decisions at Signature Health, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

26.     Upon information and belief, at all times relevant to this Complaint, Defendant Pancaro had the power to determine employee policies at Signature Health, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

27.     Upon information and belief, at all times relevant to this Complaint, Defendant Jaime Siegel was actively involved in managing the day-to-day operations of BWHC.

28.     At all times relevant to this Complaint, Defendant Pancaro was a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including Plaintiff.

29.     At all times relevant to this Complaint Defendant Pancaro was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

30.     At all times relevant to this Complaint Defendant Pancaro was, and continues to be, an employer within the meaning of the NJLAD, N.J.S.A. 10:5-5(e).

31.     At all times relevant to this Complaint, Defendant Pancaro was and is an "employer" as defined under CEPA, N.J.S.A. 34:19-2(a).

**Plaintiff Megan Decker**

32.     Plaintiff is a resident of Kearny, New Jersey, in Essex County.

33.     Plaintiff is a female.

## FACTUAL ALLEGATIONS

34.     At all times relevant to this Complaint, Plaintiff performed the duties of a receptionist in Defendants' workforce fully, faithfully, efficiently, and, moreover, performed all of her duties at a level that met or exceeded Defendants' reasonable business expectations.

35.     Defendants did the following acts knowingly and willfully.

36.     Plaintiff was employed by Defendants as a receptionist at the Signature Health and Wellness Center in Belleville, New Jersey

37.     Plaintiff was employed from September 6, 2016 until on or about February 23, 2017, when she was constructively terminated.

6

**Wage and Hour Violations**

38.     At all times relevant to this Complaint, Plaintiff was employed in a non-overtime exempt position.

39.     At all times relevant to this Complaint, Defendant regularly required Plaintiff to work in excess of forty (40) hours per week.

40.     During Plaintiff's employment with Defendants, Plaintiff was required to work hours "off the clock" and was required to work hours substantially in excess of forty (40) in a workweek without receiving overtime wages as required by law.

41.     Plaintiff was scheduled to work the following hours: Monday 10am-2pm, 4pm-8pm; Tuesday 10am-2pm, 4pm-8pm; Wednesday 10am-2pm, 4pm-8pm; Thursday 10am-2pm, 4pm-8pm; Friday 10am-2pm, 4pm-8pm; Saturday 9am-1pm.

42.     In addition to the scheduled work hours, Defendants required Plaintiff to arrive at work approximately 30 minutes before her shift was scheduled to begin.

43.     In addition to the scheduled work hours, Defendants required Plaintiff to work through the two-hour break purportedly scheduled from 2pm to 4pm each Monday through Friday.

44.     Defendants did not permit Plaintiff to leave Defendants' premises between 2pm and 4pm each Monday through Friday.

45.     Defendants had actual and/or constructive knowledge that Plaintiff was working hours in addition to her scheduled hours.

46.     Defendants failed to compensate Plaintiff for any hours worked in addition to her scheduled hours.

47.     Throughout Plaintiff's employment, Defendants failed to pay Plaintiff for all hours worked in violation of the FLSA and NJWHL.

48.     Plaintiff was not compensated time and a half for any hours worked in excess of forty (40) per week.

49.     Throughout Plaintiff's employment, Defendants failed to pay Plaintiff overtime wages for hours works in excess of forty (40) in a workweek in violation of the FLSA and NJWHL.

50.     During Plaintiff's employment with Defendants, Defendants failed to provide Plaintiff with accurate paystubs and did not have postings displayed as is required by law

51.     Throughout Plaintiff's employment with Defendants, Defendants made deductions from Plaintiff's paycheck that were never itemized or explained.

52.     Throughout Plaintiff's employment with Defendants, Defendants made unlawful deductions from Plaintiff's paycheck.

53.     Plaintiff complained about the wage and hour violations to Defendant Roy and Defendant Pancaro.

54.     Defendant Roy and Defendant Pancaro refused to remedy the wage and hour violations despite Plaintiff's complaints.

55.     Defendant Roy and Defendant Pancaro refused to remedy the unlawful deductions being made from Plaintiff's paycheck despite Plaintiff's complaints.

**Discrimination and Sexual Harassment**

56.     Notably, Defendants failed to provide their employees with a handbook outlining the company's policies and complaint procedures related to discrimination and sexual harassment.

57.     Defendants further failed to display any of the required postings outlining the company's policies and complaint procedures related to discrimination and sexual harassment.

58.     Throughout Plaintiff's employment with Defendants, Defendant Pancaro, as Plaintiff's supervisor, routinely harassed and derided Plaintiff because of her gender, actual and/or perceived disabilities, and sexual orientation.

59.     Throughout Plaintiff's employment with Defendants, Defendant Pancaro, as Plaintiff's supervisor, routinely subjected Plaintiff to severe and pervasive sexual harassment.

60.     Defendant Pancaro's actions were entirely unwelcome.

61.     Throughout Plaintiff's employment with Defendants, Defendant Pancaro would direct derogatory gender-related comments toward Plaintiff.

62.     During Plaintiff's employment, Defendant Pancaro often cornered Plaintiff in his office and sexually assaulted Plaintiff.

63.     During Plaintiff's employment, Defendant Pancaro regularly grabbed Plaintiff's chest, thighs, and buttocks.

64.     During Plaintiff's employment, Defendant Pancaro regularly purposefully dropped office items and would make Plaintiff pick them up from the ground so that Defendant Pancaro could stare at her buttocks as she picked up the items.

65.     During Plaintiff's employment, Defendant Pancaro often had entire conversations with Plaintiff while he ogled her chest only.

66.     On at least one occasion during Plaintiff's employment, Defendant Pancaro cornered Plaintiff in his office and sexually propositioned Plaintiff.

67.     Defendant Pancaro insisted that Plaintiff break up with her fiancé and that she date Defendant Pancaro because he was a doctor and a real man.

68.     Defendant Pancaro purposefully attempted to lower Plaintiff's self-esteem only to later sexually proposition Plaintiff.

69.     Defendant Pancaro regularly called Plaintiff a "whore" and "white trash" in front of employees and patients.

70.     Defendant Pancaro regularly and openly called Plaintiff a "fat ass" and constantly criticized Plaintiff whenever she ate food.

71.     Defendant Pancaro regularly derided Plaintiff for being a female and working, while Plaintiff's fiancé and father of Plaintiff's child was at home taking care of their child.

72.     Defendant Pancaro regularly told Plaintiff that she should be at home raising her child instead of working because it is the woman's role to raise children.

73.     Defendant Pancaro regularly ridiculed Plaintiff's fiancé while talking with Plaintiff and called Plaintiff's fiancé a "low-life" because Defendant Pancaro believed "men should work instead of girls."

74.     Defendant Pancaro also told Plaintiff that if he had a child, he would make the woman do "90% of the work" to raise the child because that is the female's role, and he would only provide financial support.

75.     Upon information and belief, Defendants had a pattern and practice of only hiring large-chested females to work as receptionists at Defendants' various locations.

76.     Defendant Pancaro became aware that Plaintiff was previously in a homosexual relationship.

77.     Upon learning about Plaintiff's homosexual relationship, Plaintiff Pancaro acted disgusted and told Plaintiff's coworkers that Plaintiff was a "gross lesbo."

78.     Further, at all times relevant to this Complaint, Plaintiff had an actual and/or perceived disability as that term is defined by NJLAD.

79.     Notably, Plaintiff had painful knee and shoulder injuries that impaired Plaintiff's ability to lift and carry heavy objects.

80.     Defendant Pancaro had actual and/or constructive knowledge about Plaintiff's actual and/or perceived disability.

81.    Defendant Pancaro required Plaintiff to perform tasks knowing that doing so caused Plaintiff significant pain to she knee and/or shoulder.

82.    Plaintiff complained to Defendant Pancaro that performing such tasks caused her significant pain.

83.    Defendant Pancaro refused to provide Plaintiff with any reasonable accommodations because of her disability.

84.    Instead, Defendant Pancaro demanded that Plaintiff "suck it up" and continue performing the tasks that caused her significant pain.

85.    In addition to harassing and discriminating against Plaintiff, Defendant Pancaro regularly made discriminatory comments about Defendants' patients.

86.    After Hispanic patients would leave Defendants' office following treatment, Defendant Pancaro regularly derided such patients and demanded that they "go back to their own country."

87.    Defendant Pancaro also regularly and openly used the "N-word" to refer to Defendants' Black patients.

88.    After Defendant Pancaro treated a blind patient, Defendant Pancaro ridiculed the patient for her disability and laughed when the patient was unable to find her way home.

**Plaintiff's Complaints and Subsequent Retaliation**

12

89.     Defendant Roy was aware of Defendant Pancaro's discriminatory actions toward Plaintiff.

90.     Defendant Roy failed to take any steps reasonably calculated to remedy the discrimination suffered by Plaintiff.

91.     Plaintiff complained on several occasions about the derogatory, discriminatory comments and sexual harassment to Defendant Roy.

92.     Plaintiff first complained to Defendant Roy approximately two weeks after Plaintiff began working for Defendants.

93.     Defendant Roy failed to take any steps to meaningfully investigate Plaintiff's allegations of discrimination and harassment.

94.     Defendant Roy failed to take any steps reasonably calculated to remedy the discrimination and harassment that Plaintiff suffered.

95.     By failing to take any actions reasonably calculated to remedy the discrimination and harassment, Defendant Roy effectively condoned Defendant Pancaro's unlawful actions.

96.     As a result, Defendant Pancaro increased his harassment of Plaintiff.

97.     In or about early 2017, Plaintiff again complained to Defendant Roy about the discrimination and harassment.

98.     Notably, Plaintiff complained to Defendant Roy that Defendant Pancaro sexually assaulted her and grabbed her buttocks.

13

99.     Defendants again failed to take any actions reasonably calculated to remedy the discrimination and harassment.

100.    Instead, Defendants retaliated against Plaintiff for her complaints.

101.    While Defendants were distributing employee paychecks immediately after Plaintiff complained to Defendant Roy in early 2017, Defendant Roy threatened Plaintiff with termination because of her complaints.

102.    Defendant Roy told Plaintiff that this would be her "last paycheck."

103.    Defendant Roy demeaned Plaintiff made Plaintiff beg to keep her job.

104.    Eventually Defendant Roy agreed to give Plaintiff one more chance and to not terminate her yet.

105.    Defendant Pancaro again increased his harassment of Plaintiff following her complaints to Defendant Roy.

106.    After Plaintiff's second complaint to Defendant Roy, Defendant Pancaro subjected Plaintiff to increased sexual assault and regularly groped Plaintiff's buttocks.

107.    Plaintiff subsequently complained to Defendant Roy that the discrimination and harassment only increased since her last complaint.

108.    Plaintiff complained to Defendant Roy that Defendant Pancaro was "sexist", "racist", and that she felt very uncomfortable whenever Defendant Pancaro was near her.

109.    As has been Defendants' pattern and practice, Defendant Roy failed to take any actions reasonably calculated to remedy the discrimination and harassment.

110.    The harassment, discrimination, and retaliation of Plaintiff was severe and pervasive.

111.    The harassment, discrimination, and retaliation of Plaintiff substantially altered the conditions of Plaintiff's employment in a manner that was adverse to Plaintiff.

112.    The harassment, discrimination, and retaliation that Plaintiff was subjected to increased so much that no reasonable individual should be expected to endure such treatment.

113.    As a result, Plaintiff was constructively terminated on February 23, 2017.

**Intentional Infliction of Emotional Distress**

114.    Throughout her employment with Defendants, Defendant Pancaro regularly subjected Plaintiff to intentional infliction of emotional distress.

115.    Defendant Pancaro regularly groped and sexually harassed Plaintiff, which would cause Plaintiff to openly cry.

116.    Each time Plaintiff cried after Defendant Pancaro assaulted her, Defendant Pancaro laughed at Plaintiff for crying.

117.    On at least one occasion, Defendant Pancaro noticed that Plaintiff's hand was in a drawer and he purposefully slammed it shut on her hand.

118.    Defendant Pancaro purposely tried to degrade Plaintiff's self-esteem and made her feel worthless.

119.    On one occasion, Defendant Pancaro returned from vacation with gifts for everyone in the office except for Plaintiff, and he told everyone in the office that he "forgot about [Plaintiff]."

120.    Defendant Pancaro also physically assaulted Plaintiff by throwing items at her while calling her "worthless".

121.    Defendant Pancaro would regularly throw any items within his reach at Plaintiff including, but not limited to used tissues, pens, and paper.

122.    Defendant Pancaro would regularly force Plaintiff to watch educational shows, and he said that it was because she was "dumb," "stupid," and "uneducated."

123.    Defendant Pancaro refused to let Plaintiff use the restroom during her scheduled work hours; if Plaintiff did attempt to use the restroom during her scheduled work hours, Defendant Pancaro would bang on the bathroom door and demand that she immediately get out.

124.    In so harassing and berating Plaintiff, Defendant Pancaro acted intentionally and recklessly.

125.    In so harassing and berating Plaintiff, Defendant Pancaro intended both to harass Plaintiff and to produce emotional distress.

126.    In so harassing and berating Plaintiff, Defendant Pancaro recklessly and deliberately disregarded the high degree of probability that emotional distress would follow such harassment and that such distress would likely be injurious to Plaintiff's health.

127.    In so harassing and berating Plaintiff, Defendant Pancaro's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

128.    Defendant Pancaro's conduct, in so harassing and berating Plaintiff, was a direct and proximate cause of emotional distress suffered by Plaintiff.

129.    The emotional distress suffered by Plaintiff as a result of Defendant Pancaro's conduct was so severe that no reasonable person could be expected to endure it.

130.    Defendant Pancaro's conduct, in so harassing and berating Plaintiff caused stress for Plaintiff and resulted in Plaintiff suffering deteriorating health and needed medical attention.

**Retaliation in Violation of CEPA**

131.    Defendant Pancaro regularly instructed Plaintiff to write out treatment plans for patients.

132.    Plaintiff reasonably believed that writing out a patient treatment plan without being properly qualified to do so was a violation of relevant laws and/or regulations.

133.    Plaintiff objected to writing out treatment plans for Defendants' patients.

134.    Despite Plaintiff's complaints and objections, Defendant Pancaro continued to pressure Plaintiff to write out patient treatment plans.

135.    Plaintiff complained to Defendant Pancaro and Defendant Roy that she believed it was a violation of relevant laws and/or regulations for her to write out a patient treatment plan without being properly qualified to do.

136.    In response to Plaintiff's complaints, Defendant Pancaro yelled at Plaintiff and increased his harassment of her.

137.    In response to Plaintiff's complaints, Defendant Roy threatened to terminate Plaintiff and pressured her to "do whatever [Defendant Pancaro] asked", regardless of her legal objections to doing so.

138.    Additionally, Plaintiff became aware that, upon information and belief, Defendants engaged in a pattern of practice whereby they would falsely assert that they visited one or more patients at home for the purposes of obtaining insurance payments for services that were never rendered.

139.    Plaintiff further became aware that, upon information and belief, Defendants engaged in a pattern or practice whereby they would circle treatments on the patient billing form that were more expensive than the treatments patients actually received.

140.    Upon information and belief, Defendants engaged in the above actions knowingly and purposefully so that they would receive more money from insurance companies.

141.    Plaintiff reasonably believed the above actions to constitute insurance fraud.

142.    Plaintiff complained to Defendant Pancaro and Defendant Roy that she reasonably believed Defendants were engaged in insurance fraud.

143.    In response to Plaintiff's complaints, Defendants failed to meaningfully investigate Plaintiff's allegations.

144.    In response to Plaintiff's complaints, Defendants failed to take any other action reasonably calculated to remedy Defendants' actions.

145.    Defendant Pancaro and Defendants Roy, however, immediately retaliated against Plaintiff by intensifying their harassment of Plaintiff.

146.    Defendants retaliated against and constructively terminated Plaintiff in violation of CEPA.

**Battery**

147.    Throughout Plaintiff's employment with Defendants, Defendant Pancaro regularly subjected Plaintiff to unwanted touchings and battery.

148.    Defendant Pancaro regularly groped Plaintiffs buttocks, thighs, and chest.

149.    Defendant Pancaro further regularly threw objects at Plaintiff with intentions to strike Plaintiff with those objects.

150.    One at least one occasion, Defendant Pancaro purposefully slammed a drawer closed while Plaintiff's hand was in the drawer intending to cause Plaintiff physical harm.

151.    Additionally, Defendant Pancaro had offered Plaintiff chiropractic treatment for her shoulder and back injuries.

19

152.    However, instead of treating Plaintiff's injuries, Defendant Pancaro took Plaintiff to the back corner of the room and used the opportunity to intentionally injury Plaintiff.

153.    Defendant Pancaro failed to follow any acceptable standards for chiropractic treatment of patients, and, instead, Defendant Pancaro purposefully and forcefully hit Plaintiff's shoulder so as to exacerbate her injuries.

154.    After Defendant Pancaro purported to treat Plaintiff, Plaintiff experienced increased pain in her shoulder and back.

155.    Plaintiff's shoulder and back injuries continue to cause Plaintiff elevated levels of pain, and Plaintiff's shoulder and back injuries caused by Defendant Pancaro's actions have not healed.

**Plaintiff's Constructive Discharge**

156.    The above sexual harassment, discrimination, retaliation, battery, and intentional infliction of emotional distress that Plaintiff was subjected to was constant, severe, and pervasive.

157.    The unlawful conduct that Plaintiff was subjected to was so severe and intolerable that a reasonable person would be forced to resign rather than endure it.

158.    As a result of the above sexual harassment, discrimination, retaliation, battery, and intentional infliction of emotional distress, Plaintiff began experienced severe anxiety and panic attacks.

159.     The emotional distress Plaintiff suffered because of Defendants' unlawful actions culminated on February 23, 2017 when experienced a debilitating bout of anxiety and panic attacks at the thought of having to return to work for Defendants.

160.     Plaintiff immediately went to the Emergency Room because of the severe emotional distress that she was experiencing.

161.     While in the Emergency Room, Plaintiff's doctors required that she not return to work because of the severe emotional distress that Defendants caused her.

162.     Accordingly, on February 23, 2017, Plaintiff was constructively terminated.


**FIRST CAUSE OF ACTION**
**(Violations of the FLSA, 29 U.S.C. §§ 201 *et seq.* – Unpaid Wages)**
**(Against All Defendants)**

163.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

164.     At all times relevant to this action, Defendants were engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a) and/or were employed in an enterprise engaged in commerce for the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

165.     Plaintiff was not exempt from the Fair Labor Standards Act.

166.     The provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff.

167.   Throughout the statute of limitations period covered by these claims, Plaintiff worked hours for which she was not paid.

168.   Defendants have failed to pay Plaintiff for all hours that Plaintiff worked.

169.   At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff the regular hourly rate for work done for Defendants and willfully failing to keep records required by the FLSA even though Plaintiffs was entitled to pay for the hours she spent working for Defendants.

170.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.  Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

171.   Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

172.   Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages and interest thereon.

173.   Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants her unpaid wages, an additional, equal amount as liquidated damages for Defendants' willful violations of the FLSA and for their unreasonably delayed payment of wages, together with interest, reasonable attorneys' fees, costs and disbursements in connection with this action, pursuant to 29 U.S.C. § 216(b).

22

**SECOND CAUSE OF ACTION**
**(FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.*)**
**(Against All Defendants)**

174.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

175.    At all times relevant to this action, Defendants were engaged in commerce or the production of goods for commerce within the meaning of the FLSA and/or were employed in an enterprise engaged in commerce for the production of goods for commerce within the meaning of the FLSA.

176.    Throughout the statute of limitations period covered by these claims, Plaintiff regularly worked in excess of forty (40) hours per workweek.

177.    At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay Plaintiff at one and one half times the regular rate at which he was employed for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA even though Plaintiff was entitled to overtime.

178.    At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff the required overtime rates, one and a half times the regular rate at which she was employed for hours worked in excess of forty (40) hours per workweek.

179.    Defendants' actions were willful within the meaning of the FLSA.

180.    Defendants' failure to comply with the FLSA overtime provisions caused Plaintiff to suffer loss of wages and interest thereon.

181.    Plaintiff seeks damages in the amount of his respective unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.


### THIRD CAUSE OF ACTION
**(Violations of the NJWHL, N.J.S.A. § 34:11-56a, *et seq.*– Unpaid Wages)**
**(Against All Defendants)**

182.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

183.    At all times relevant to this Complaint Defendants were and are employers within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

184.    Throughout the statute of limitations period covered by these claims, Plaintiff worked hours for which she was not paid.

185.    At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff the regular hourly rate for work done for Defendants, and willfully failing to keep records required by the NJWHL even though Plaintiffs was entitled to pay for the hours she spent working for Defendants.

186.    Defendants' failure to comply with the NJWHL caused Plaintiff to suffer loss of wages and interest thereon.

187.    Due to Defendants' NJWHL violations, Plaintiff is entitled to recover unpaid wages and interest owed on unpaid wages held by Defendants over an extended period of time, as well as reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(NJWHL Overtime Violations, N.J.S.A. § 34:11-56a, *et seq.*)**
**(Against All Defendants)**

188.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

189.    Throughout the statute of limitations period covered by these claims. Plaintiff regularly worked in excess of forty (40) hours per workweek.

190.    At all relevant times, Defendants operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiff at one-and-one-half times her regular rate for work in excess of forty (40) hours per workweek, even though Plaintiff was entitled to overtime.

191.    At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff at the required state law overtime rate for hours worked in excess of forty (40) hours per workweek.

192.    Plaintiff seeks damages in the amount of her respective unpaid overtime compensation, as well as any and all available statutory and/or punitive damages, pre- and post-

judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**(Illegal Pay Deductions, N.J.S.A. § 34:11-4.1, *et seq.***
**(Against All Defendants)**

193.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

194.    N.J.S.A. 34:11-4.4 provides that: "[n]o employer may withhold or divert any portion of an employee's wages unless: (a) [t]he employer is required or empowered to do so by New Jersey or United States Law.

195.    N.J.S.A. 34:11-4.4(b) contains subparts numbered (1) through (11) which identify the legitimate and lawful circumstances under which an employer may withhold or divert sums from their employees' wages.

196.    None of the subparts identified in N.J.S.A. 34:11-4.4(b) apply to the claims asserted in this Complaint by Plaintiff.

197.    Defendants systematically took many unlawful deductions from Plaintiff's wages.

198.    These unlawful deductions were taken from the pay of Plaintiff were facilitated by Defendants' failure to properly list deductions on Plaintiff's paystubs.

199.    Plaintiff seeks restitution for of any and all unlawful wage deductions made by Defendants.

200.    The NJWPL creates a private cause of action for employees to sue in court for wages claimed to be due.  A claim for wages improperly withheld or diverted is a claim for non-payment of wages due for which there is a private cause of action under New Jersey statutory law.

201.    In addition, Plaintiffs bring this cause of action under the FLSA for any deductions which caused Plaintiff to make less than the minimum wage and/or to be paid less than the proper overtime rate (if applicable).

**SIXTH CAUSE OF ACTION**
**(Discrimination Based on Gender in Violation of NJLAD)**
**(Against All Defendants)**

202.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

203.    At all times relevant to this Complaint, Defendants were and are employers as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

204.    Plaintiff is female.

205.    Discrimination on the basis of gender is actionable under NJLAD.

206.    As a female, Plaintiff belongs to the group protected by NJLAD.

207.    Plaintiff was subjected to harassment and a hostile work environment based on her gender.

208.    The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

209.    At all times relevant to this Complaint, Defendants' discrimination against Plaintiff based on her gender substantially and materially altered Plaintiff's conditions of employment in ways that were adverse to Plaintiff.

210.    Defendants discriminated against Plaintiff because of her gender by subjecting Plaintiff to harassment and by summarily discharging Plaintiff from her employment.

211.    Defendants were aware of, or should have been aware of, and are directly and vicariously responsible for, such hostile work environment.

212.    Defendants engaged in unlawful employment practices and unlawful discriminatory as those term are defined by the NJLAD, N.J.S.A. 10:5-12.

213.    These acts violate NJLAD and are illegal.

214.    In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff's rights pursuant to NJLAD giving rise to punitive damages.

215.    As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation.

## SEVENTH CAUSE OF ACTION
### (Gender Discrimination in Violation of NJLAD—Hostile Work Environment Sexual Harassment)
### (Against All Defendants)

216.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

217.    At all times relevant to this Complaint, Defendants were and are employers as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

218.    Plaintiff is a woman and belongs to a group protected by the NJLAD.

219.    Plaintiff was subject to substantial, persistent, and unwelcome sexual harassment.

220.    To the extent that Defendants provided any avenue of complaint, Plaintiff reasonably availed herself of any complaint procedures Defendants provided to its employees.

221.    Discrimination on the basis of gender is actionable under NJLAD.

222.    Plaintiff was subjected to unwelcome harassment

223.    Said unwelcome sexual harassment was based on Plaintiff's gender.

224.    The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

225.    Defendants discriminated against Plaintiff because of her gender by subjecting Plaintiff to harassment and by subjecting Plaintiff to adverse employment actions.

226.    Defendant Signature Health is liable for the acts alleged herein because its managers established a managerial culture that tolerated and encouraged sexual discrimination and harassment.

227.    Defendants were aware of, and are directly and vicariously responsible for, such harassment and discrimination.

228.    Defendants failed to exercise reasonable care to prevent and correct promptly any harassing behavior based on gender.

229.    Defendants engaged in unlawful employment practices and unlawful discriminatory as those term are defined by the NJLAD.

230.    These acts violate NJLAD and are illegal.

231.    In taking the above-described discriminatory actions, Defendants acted with malice and reckless indifference to Plaintiff's rights pursuant to NJLAD giving rise to punitive damages.

232.    As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation.

**EIGHTH CAUSE OF ACTION**
**(Violation of NJLAD, N.J.S.A. 10:5-1 *et seq*. – Disability Discrimination)**
**(Against All Defendants)**

233.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

234.    At all times relevant to this complaint, Defendants were and are "employers" within the meaning of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

235.    At all times relevant to this Complaint, Plaintiff was "disabled" within the meaning of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq*.

236.    Discrimination on the basis of disability is actionable under NJLAD.

237.    As a disabled individual, Plaintiff belongs to the group protected by NJLAD.

238.    Plaintiff was subjected to harassment and a hostile work environment based on her disability.

239.    The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

240.    At all times relevant to this Complaint, Defendants' discrimination against Plaintiff based on her disability substantially and materially altered Plaintiff's conditions of employment in ways that were adverse to Plaintiff.

241.    Defendants discriminated against Plaintiff because of her disability by subjecting Plaintiff to harassment.

242.    Defendants discriminated against Plaintiff by refusing to offer Plaintiff reasonable accommodations.

243.    Defendants engaged in unlawful employment practices and unlawful discrimination as those term are defined by the NJLAD, N.J.S.A. 10:5-12.

244.    These acts violate NJLAD and are illegal.

245.    In taking the above described discriminatory actions, the Defendants acted with malice and reckless indifference to Plaintiff's rights pursuant to NJLAD giving rise to punitive damages.

246.    As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation.


**NINTH CAUSE OF ACTION**
**(Retaliation Under NJLAD)**
**(Against All Defendants)**


247.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

248.    At various times during his employment with Defendants, Plaintiff raised complaints that Defendants were unlawfully discriminating against her on the basis of her gender, sexual orientation, and/or disability.

249.    At various times during her employment Plaintiff raised complaints with Defendants concerning severe and pervasive sexual harassment.

250.    Whenever Plaintiff raised these complaints Defendants failed to meaningfully investigate Plaintiff's complaints or take any action reasonably calculated to remedy the unlawful discrimination plaintiff complained of.

251.    Instead Defendants immediately responded by escalating their harassment Plaintiff.

32

252.    In retaliation for her complaints, Defendants constructively discharged Plaintiff on February 23, 2017.

253.    Defendants' harassment and discharge of Plaintiff, and other retaliatory acts following her complaints of unlawful discrimination are in direct violation of Plaintiff's rights under NJLAD, N.J.S.A. 10:5-12.

254.    Plaintiff engaged in the protected activity of complaining to her employer regarding issues of unlawful discrimination on the basis of sexual harassment, gender, sexual orientation, and/or disability.  A causal link exists between the protected activity and adverse employment action as Defendants knew of Plaintiff's activities and complaints, and Defendants' retaliatory acts were a direct result of such complaints.

255.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable injuries and damages.

256.    Plaintiff seeks relief as provided by the NJLAD, including, without limitation, backpay for lost wages, commissions, or diminishment, loss of other benefits, and any and all such legal or equitable relief as may be appropriate to effectuate for purposes of the NJLAD, including but not limited to compensatory damages for mental anguish and emotional distress and other injuries incurred as a result of the retaliation.

257.    As Defendants' retaliatory actions, including but not limited to the retaliatory discharge of Plaintiff, were willful, malicious, and/or with conscious disregard of plaintiff's statutorily protected rights, Plaintiff is entitled to an award of punitive damages.

## TENTH CAUSE OF ACTION
### (Battery – Against Defendant Pancaro)

258.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

259.    Defendant Pancaro regularly subjected Plaintiff to unwanted touchings.

260.    Defendant Pancaro regularly and maliciously threw objects at Plaintiff with intend to strike her.

261.    The above actions were nonconsensual.

262.    In taking the above actions, Defendant Pancaro intended to cause harmful and offensive contact to Plaintiff.

263.    As a direct and proximate result of the aforementioned tortious conduct by Defendant Pancaro, that is, battery, Plaintiff has suffered and will continue to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, physical pain and suffering, and damage to her professional reputation.

## ELEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (Against Defendant Pancaro)

264.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

265.    Defendant Pancaro consistently and continuously berated, embarrassed, and verbally abused Plaintiff throughout Plaintiff's employment with Defendants.

266.    Defendant Pancaro would, for instance, yell at Plaintiff in front of patients and in front of Plaintiff's co-workers.

267.    Defendant Pancaro also regularly derided Plaintiff by calling her "stupid," "fat," "ugly," a "whore," "white trash" and other derogatory labels.

268.    Defendant Pancaro would sexually harass and physically assault Plaintiff.

269.    In so harassing and berating Plaintiff, Defendant Pancaro acted intentionally and recklessly.

270.    In so harassing and berating Plaintiff, Defendant Pancaro intended both to harass Plaintiff and to produce emotional distress.

271.    In so harassing and berating Plaintiff, Defendant Pancaro recklessly and deliberately disregarded the high degree of probability that emotional distress would follow such harassment and that such distress would likely be injurious to Plaintiff's health.

272.    In so harassing and berating Plaintiff, Defendant Dr. Pancaro's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

273.    Defendant Pancaro's conduct, in so harassing and berating Plaintiff, was a direct and proximate cause of emotional distress suffered by Plaintiff.

274.    The emotional distress suffered by Plaintiff as a result of Defendant Pancaro's conduct was so severe that no reasonable person could be expected to endure it.

275.    Defendant Pancaro's conduct, in so harassing and berating Plaintiff caused stress for Plaintiff and resulted in Plaintiff suffering deteriorating health and needed medical attention.

276.    Defendant Pancaro knew that harassment and discrimination against Plaintiff would cause Plaintiff substantial physical and emotional harm.

277.    As a direct and proximate result of the aforementioned discriminatory conduct by Defendant Pancaro, that is, intentional infliction of emotional distress, Plaintiff has suffered and will continue to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental anguish and suffering, physical consequences of the severe emotional distress and damage to her professional reputation.


### TWELFTH CAUSE OF ACTION
### (Violations of CEPA, N.J.S.A. 34:19-1 to N.J.S.A. 34:19-8)
### (Against All Defendants)

278.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

279.    At all times relevant to this Complaint, Defendants are and were "employers" within the meaning of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 to N.J.S.A. 34:19-8.

280.    Plaintiff was harassed and retaliated against as a consequence of complaining

about and/or refusing to be party to Defendants' illegal actions.

281.    Defendants' actions in harassing and retaliating against Plaintiff for her complaints about and/or refusal to be party to Defendants' illegal actions violated the provisions of CEPA.

282.    As a direct and proximate result of Defendants' retaliation, in violation of CEPA, Plaintiff has experienced and will continue to experience pain and suffering, and extreme and severe mental anguish and emotional distress.  Plaintiff has suffered a loss of earnings and other employment benefits and job opportunities.   Plaintiff is thereby entitled to general and compensatory damages.

283.    Plaintiff alleges that the outrageous conduct of Defendants described above was done with malice, fraud, and oppression; with conscious disregard for her rights; and with the intent, design, and purpose of injuring Plaintiff. Defendants, through their officers, managing agents, and/or supervisors authorized, condoned, and/or ratified the unlawful conduct named in this action.  By reason thereof, Plaintiff is entitled to punitive or exemplary damages, pursuant to N.J.S.A. 34:19-5(f), from Defendants in a sum according to proof at trial.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that judgment be entered on her behalf in accordance with the above claimed causes of action and requests the following:

A.    All compensatory and economic damages;

B.    All reasonable expenses incurred by Plaintiffs, including court costs and other relief, both in law and equity, to which Plaintiff may show herself justly entitled;

C.      Attorneys' fees, including attorneys' fees as provided by statute;

D.      Punitive and statutory damages as authorized by law;

E.      Pre-judgment and post-judgment interest; and

F.      Such further relief as the Court finds just and proper.

Dated:   Park Ridge, New Jersey          Respectfully submitted,
         July 31, 2017
                                         **KRAKOWER DICHIARA LLC**

                                         By:

                                          _s/ Todd Krakower_____

                                               Todd J. Krakower

                                         One Depot Square
                                         77 Market Street, Suite 2
                                         Park Ridge, New Jersey 07656
                                         347-765-1500
                                         347-765-1600 (fax)

                                         *Attorneys for Plaintiff*


### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

38